UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT DORGAY,

    Plaintiff,

  v.            Case No. 22-C-847

DENISE SYNDOM, et al.,

    Defendants.

---

## SCREENING ORDER

---

  Plaintiff Robert Dorgay, who is currently serving a state prison sentence at Redgranite Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Dorgay's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

  Dorgay has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Dorgay has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $218.54. Dorgay's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Dorgay asserts that in July 2014, his then-girlfriend informed his probation agent, Brenda Muench, that Dorgay had assaulted her. Dorgay denies that he assaulted his girlfriend. He explains that Muench believed his girlfriend and refused to even listen to his and his friend Brian Kelly's versions of what happened. Throughout August 2014, Muench allegedly took numerous steps, including lying and misrepresenting the facts, to begin and advance a criminal investigation into Dorgay. Dorgay states that, based largely on Muench's false statements, he was denied a preliminary hearing, and in October 2014 his probation was revoked. Dorgay states that he was sent to Waupun Correctional Institution for one year. According to Dorgay, in May 2015, Muench made additional false statements in connection with another pending case, which resulted in his bail amount in that case being raised.

Dorgay explains that in June 2015, he filed complaints about Muench and her supervisor based on the supervisor's failure to address Muench's alleged misconduct. Dorgay asserts that Regional Chief Neil Thoreson delegated the investigation into the complaints to Assistant Chief Angelique Richards, who informed Dorgay in July 2015 that the investigation and any responses would be confidential. Dorgay asserts that no investigation took place.

In June 2015, just prior to Dorgay's release from prison, Chad Schepp was assigned as Dorgay's new probation agent. According to Dorgay, Schepp downplayed Dorgay's concerns about retaliation by Muench and Dorgay's former business partner who was facing criminal charges. Dorgay explains that, after his release, he was not allowed to have contact with his friend Kelly, but he was permitted to meet with him one time to pick up his property. According to Dorgay, the same day he was meeting with Kelly (with Schepp's permission), his former business partner called Schepp and reported that Dorgay had threatened him and Dorgay's former girlfriend.

3

Schepp, based on false statements he allegedly made to his supervisor, got approval to send a team of officers and probation agents to apprehend Dorgay. According to Dorgay, when the officers and agents arrested him, they punched him repeatedly and shoved his face into the ground even though he was not resisting. Dorgay asserts that he was taken to the hospital for treatment and then to the Milwaukee County Jail. Dorgay states that the officers filed false reports in connection with the incident. According to Dorgay, in September 2015, he and Kelly filed complaints about the officers' conduct. Dorgay asserts that the Regional Chief Thoreson failed to initiate an investigation. Dorgay's probation was once again revoked.

Dorgay asserts that Kelly continued to file complaints on his and Dorgay's behalf. Dorgay states that an investigation was not initiated until February 2016. In April 2016, after multiple delays, Dorgay waived his right to a revocation hearing, and he was released from prison, once again under the supervision of Schepp. At that point, Dorgay had five and one-half months left on his probation. Dorgay asserts that he was on GPS monitoring and followed every condition of his release leading up to his July 2016 trial.

According to Dorgay, in early July 2016, he received permission to travel to visit his family. Dorgay was arrested based on a blank warrant. He was released a couple days later, on July 5, 2016, and was told there had been an error in the system. Dorgay asserts that he later learned that Schepp's supervising agent had entered the warrant, but Schepp lied and said it was because the GPS monitor had not been charged and Dorgay could not be located. According to Dorgay, to cover his tracks, Schepp filed a phony work order for monitor maintenance. A technician confirmed there was nothing wrong with the monitor.

On July 26, 2016, on the first day of Dorgay's trial for domestic violence, resisting arrest, and bail jumping, he had a scheduled office visit with Schepp at 8:00 a.m. He arrived at the office

at about 7:40 a.m. Dorgay asserts that ADA Williams did not have a key witness and so did not want Dorgay to appear at his trial. According to Dorgay, she called Schepp and told him to keep Dorgay at the office. Dorgay asserts that, as he waited at the office, he overhead office staff discussing his situation. He became aware that the same unit of officers and agents who had previously arrested him were on their way to the office to take him into custody. Dorgay asserts that, fearing for his safety, he left the office. Dorgay did not attend his trial.

Dorgay asserts that on July 27, 2016, Muench falsely testified at Dorgay's trial in connection with the domestic violence charges. He also asserts that the officers and agents who used excessive force against him falsely testified in connection with the resisting arrest and bail jumping charges. Finally, Dorgay asserts that ADA Williams falsely implied to the jury that Dorgay had chosen not to appear at the trial without informing the jury or the court that she had told Schepp to keep Dorgay at his office. Dorgay asserts that he was acquitted of the resisting arrest and bail jumping charges, but he was found guilty of the domestic violence charges. During sentencing, ADA Williams admitted that she had been concerned on the first day of trial that Dorgay may have had something to do with her inability to locate her key witness, but she was ultimately proven wrong on that point.

Finally, Dorgay asserts that in early November 2016, his attorney sent him a package containing legal materials, some of which were privileged, but he mistakenly delivered the package to Schepp's office. According to Dorgay, Schepp opened the package, then repackaged it, and dropped it off at Dorgay's institution. Dorgay asserts that the package was not discovered by institution staff and delivered to Dorgay until early December 2016.

5

Case 1:22-cv-00847-WCG   Filed 09/20/22   Page 5 of 9   Document 7

## THE COURT'S ANALYSIS

Dorgay, who filed his complaint under §1983 on July 25, 2022, purports to assert numerous claims against fifteen Defendants. For "§ 1983 claims, a cause of action accrues when the plaintiff knew or should have known that [he] had sustained an injury." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). The incidents alleged in Dorgay's complaint occurred in 2014 through 2016, and Dorgay knew he had sustained an injury at the time of those alleged incidents. The relevant Wisconsin statute of limitations for claims that accrued in 2014 through 2016 is six years. *See D'Aquisto v. Love*, No. 20-C-1034, 2020 WL 5982895, at *1 (E.D. Wis. Oct. 8, 2020) (explaining that in 2018 the Wisconsin legislature changed the statute of limitations under Wis. Stat. § 893.53 from six years to three years). Thus, any purported claim that accrued before July 25, 2016 (six years before Dorgay filed his complaint) must be dismissed because it is barred by the statute of limitations. The Court will therefore limit its analysis to those claims that accrued on July 25, 2016, or later.

Dorgay does not state a claim based on his allegations that, fearing a mistrial, ADA Williams asked his probation agent to keep Dorgay at the office until she could locate a key witness. Dorgay's assertions that he was "detained" are undermined by his admission that he left the probation agent's office, removed his GPS monitor, and failed to attend his trial. Dorgay states that ADA Williams forced him to miss his trial, but it was Dorgay's decision to leave the office without permission and to skip trial, not ADA Williams'. Dorgay makes much of the fact that she allegedly lied to the judge, informing him that she did not order Dorgay to be detained because she had no authority to detain him. But even assuming ADA Williams misrepresented her communications with Dorgay's probation agent, that does not mean she is responsible for Dorgay's decision to disregard his probation agent's instructions and skip the trial.

6

Dorgay also fails to state a claim based on allegations that officers and probation agents lied during their testimony at his trial. As the Seventh Circuit has explained, the Constitution requires that criminal defendants be "entitled to a trial that will enable jurors to determine where the truth lies. That a witness may give false or mistaken testimony therefore is not an independent constitutional violation." *Buie v. McAdory*, 341 F.3d 623, 625 (7th Cir. 2003); *Liddell v. Smith*, 345 F.2d 491, 494 (7th Cir. 1965) ("in the absence of statute, no action lies to recover damages caused by perjury or subornation of perjury"). Further, at least as it relates to the officers and agents who allegedly used excessive force, Dorgay suffered no harm as a result of their testimony because he was acquitted of the resisting arrest and bail jumping charges.

Next, the fact that ADA Williams highlighted to the jury that Dorgay had not appeared at trial also fails to state a claim. Absolute immunity shields a prosecutor's conduct as an advocate that is "intimately associated with the judicial phase of the criminal process," such as presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976).

Finally, Dorgay fails to state a claim based on allegations that his former probation agent opened a package containing legal materials that his attorney mistakenly delivered to the probation agent's office. The Seventh Circuit has characterized the reading of mail to or from a prisoner's lawyer as infringing the right of access to the courts. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010). The appellate court has explained that interception of a prisoner's confidential communications with his lawyer is subject to harmless-error analysis. *Id.* at 806. As such, absent allegations that a legal claim was lost or some other injury resulted from the mail being opened, a prisoner fails to state a claim. *See id.*; *Ray v. Wyciskalla*, 461 F. App'x 507, 509 (7th Cir. 2012). The probation agent did not receive the package from Dorgay's lawyer until *after*

7

Dorgay had been convicted. Accordingly, even assuming the probation agent wrongfully reviewed the legal materials, Dorgay did not suffer any harm.

Although courts generally permit civil plaintiffs at least one opportunity to amend their complaints, the Court need not do so where the amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). Dorgay's complaint is thorough in its allegations of facts surrounding his purported claims, so the Court finds that further amendment would be futile.

**IT IS THEREFORE ORDERED** that Dorgay's motion for leave to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because any claim that accrued before July 25, 2016 is barred by the relevant statute of limitations and because the complaint otherwise fails to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that the agency having custody of Dorgay shall collect from his institution trust account the $131.46 balance of the filing fee by collecting monthly payments from Dorgay's prison trust account in an amount equal to 20% of the preceding month's income credited to Dorgay's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Dorgay is transferred to another institution, the transferring institution shall forward a copy of this Order along with Dorgay's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

Dated at Green Bay, Wisconsin this 20th day of September, 2022.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

9

Case 1:22-cv-00847-WCG   Filed 09/20/22   Page 9 of 9   Document 7